LAFAYETTE FINANCE CORPORATION *vs.* GERALDINE T. CUNNINGHAM *et al.*

JULY 9, 1958.

PRESENT: Condon, C.J., Roberts, Andrews and Powers, JJ.

POWERS, J.   This bill in equity was brought to remove a cloud on title of real estate purchased by the complainant at an execution sale, the complainant being a judgment creditor of one of the respondents.  After a hearing in the superior court on bill, answer and proof, a decree was entered denying and dismissing the bill.  The cause is before us on the complainant's appeal from such decree on the grounds that it is against the law, against the evidence and the weight thereof, and that the trial justice erred in applying the law to the evidence.

The material facts are not in dispute.  The respondents William and Geraldine Cunningham are husband and wife and at the time of their marriage on February 22, 1941 the real estate in question, which is located in the town of Lincoln, was the sole property of the wife, who had purchased it in October 1936 with her own funds.

On August 8, 1947 Geraldine conveyed the property to herself and husband as joint tenants for the purpose, as she says, of putting his name on the property in order to take advantage of the veterans' exemption to which her husband was entitled.

On August 23, 1954 complainant attached the property, the respondent William being indebted to it, and on May 20, 1955 he reconveyed his interest to his wife.  Although the suit which was originally commenced by complainant in August 1954 never came to trial, a judgment was obtained against William in Massachusetts, which was only

partially satisfied. The complainant then brought an action of debt on judgment in the superior court of this state and on November 14, 1955 the defendant in that action, respondent William here, submitted to judgment in the amount of $6,633.89 plus costs of $13.05. Execution was issued on January 18, 1956 and levy was made on the property in question February 1, 1956. A sheriff's sale was held on May 1, 1956 at public auction, complainant being the only bidder and purchaser.

Both respondents testified that there never was any intention on the part of the wife to make a gift of an undivided half of her property to her husband, nor did the husband at any time consider that he held the property in fee jointly with his wife. The respondent William was not asked by counsel for either party whether or not he owned any other property.

The complainant brought this bill of complaint pursuant to the provisions of general laws 1956, §6-16-1, the pertinent provisions of which read: "Every gift, grant or conveyance of lands, tenements * * * had or made and contrived of fraud, covin, collusion or guile, to the intent or purpose to delay, hinder or defraud creditors of their just demands of what nature soever * * * shall be henceforth deemed and taken, as against such person or persons * * * to be clearly and utterly void, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding * * *."

The trial justice dismissed the bill holding that the complainant was required to prove actual or constructive fraud, saying: "You agree there isn't any actual fraud, but you claim constructive fraud. I doubt very much, Gentlemen, that it would be right for me to decide there was constructive fraud. This being an action to set aside an alleged fraudulent conveyance of real estate as desired by the petitioner, the petitioner has to prove it."

The complainant contends that the trial justice misconceived the law and cities *Tanner* v. *Whitney,* 52 R. I. 391, where this court held that our statute did not require fraudulent intent. The facts in *Tanner* v. *Whitney, supra,* are not unlike those in the case at bar. There the wife conveyed to her husband an undivided half interest in a house owned by her. This property was subsequently sold and the money from the sale was deposited in a joint bank account. Later they withdrew this deposit and with the money bought the real estate which became the subject of the litigation.

Counsel for complainant stresses the language of the court in that case where, at page 393, it was stated: "Assuming—as is probably the fact—that most of the money paid by respondents for this property came originally from Mrs. Whitney, nevertheless Mr. Whitney by the free and voluntary act of his wife was a joint owner of the family real estate and of the bank account from 1912 to 1929."

There, as in the case at bar, the trial justice was not satisfied that there was an actual intent to defraud, and at page 394 we stated: "There is only one conclusion, however, to be drawn from his conduct, namely, that his intention was that the property he had received from his wife should not be applied in payment of his debts. As has often been said, a debtor must be just before he is generous. The vital question is, does the conveyance deprive the creditor of a right which would be legally effective had the conveyance not been made?" The court further said: "There is no place for question in such cases clearly of any intention to delay or defraud in the sense of any actual purpose in the mind. The validity of the conveyance is to be determined not by the debtor's intention, even if honest, but by the effect on the creditor's right of recovery."

The respondents contend, however, that *Tanner* v. *Whitney, supra,* is distinguishable on its facts in that there appears to have been a finding of fact that the conveyance from Whitney to his wife disposed of all of his property,

whereas in the case at bar there is no evidence that the conveyance from William to his wife disposed of all of his property.

We have examined the transcript and although it is true, as respondents contend, that there is no direct testimony as to whether or not the respondent husband owned any other property to which complainant might look for satisfaction of its judgment, the inference is inescapable that he had no other property. In cross-examination by counsel for complainant William was interrogated as follows: "Q. Who pays the taxes? A. I do when I can. Q. But when they are paid, you pay them? A. Yes. Q. She doesn't have any income? A. No." At this point the court intervened and asked: "What is your occupation? Witness: Well, I am out of work. But I am a bulldozer operator. I could do several other things. If it gets a little harder, I get other work. The court: What do you do with your wages when you get them? Witness: Spend it for food and bills."

Furthermore we are of the opinion that in such circumstances as were shown here, there is a prima facie presumption that the respondent debtor possesses no other property. See *Carroll* v. *Salisbury,* 28 R. I. 16. See also *Savoie* v. *Pion,* 52 R. I. 422.

The respondents also contend that the husband never had more than the legal title and that the equitable title had always remained in his wife. This argument rests on the undisputed testimony that she put her husband's name on the property to obtain the benefit of the tax exemption to which he is entitled as a veteran, and that this arrangement was understood and accepted by him. In support of this contention they cite *Kranjcec* v. *Belinak,* 114 Mont. 26.

There the wife purchased the property out of her own funds and by accident or mistake the deed was made out to both her and her husband. The testimony shows that the latter spoke to the banker who prepared the deed telling him that it should have been made out to the wife, but he did

not have a new deed made because of the cost of $5. Later he became involved in financial difficulties and conveyed his interest to his wife. The court held that although the general rule was that such a conveyance constituted a gift, it was only a presumption which could be rebutted. The court found as a fact that the husband never held anything but the legal title and that the equitable title had always been in the wife.

Such is not the situation here. This property was purchased by the wife prior to her marriage and it was not until she had been married for six years that she voluntarily conveyed an undivided half interest to her husband. For any tax exemption to apply, it was essential that the husband should in fact be the owner of property which could be the subject of taxation. The respondent wife is presumed to have known this. It was her intention to make her husband a joint tenant with herself of the property in question. She was motivated by the tax benefit thereby to be obtained. Intention is gathered from our conduct—motive simply explains it. We are of the opinion that the trial justice was in error.

The complainant's appeal is sustained, the decree appealed from is reversed, and on July 14, 1958 the parties may present to this court a form of decree, in accordance with this opinion, for entry in the superior court.

*Adler & Pollock, J. Raymond Dubee,* for complainant.

*F. Thomas O'Halloran,* for respondents.